RECEIVED
IN ALEXANDRIA, LA.

JAN 25 2013

TONY R. MOORE, CLERK
BY ______ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **GLOBAL MANAGEMENT ENTERPRISE, LLC** | : | **DOCKET NO. 2:11-1681** |
| **VS.** | : | **JUDGE TRIMBLE** |
| **COMMERCE & INDUSTRY INS. CO. (CHARTIS)** | : | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the court is a "Motion for Summary Judgment" (R. #11) filed by Commerce and Industry Insurance Company ("Chartis")[1] and a "Motion to Dismiss Defendant's Motion for Summary Judgment and Grant Plaintiff's Cross Motion for Summary Judgment" (R. #18) filed by Global Management Enterprise, LLC ("Global"). In its motion for summary judgment, Chartis maintains that Global employee, Librado De La Cruz ("De La Cruz") is a longshoreman and therefore not entitled to the workers' compensation benefits provided by Chartis. Thus, Chartis seeks to have Global's claims against it dismissed. In the motion to dismiss, Global maintains that De La Cruz is not a longshoreman and therefore De La Cruz is entitled to the workers compensation benefits provided by Chartis. Global seeks to have Chartis' motion for summary judgment dismissed or alternatively, Global seeks judgment as a matter of law in its favor.

## FACTUAL STATEMENT

Global is in the business of supplying temporary workers to industrial, construction and hospitality businesses. Chartis provides workers compensation coverage to Global for its employees.

---

[1] Commerce and Industry Insurance Company is an insurance company doing business in Louisiana and conducting business under the name of Chartis.

On July 5, 2010, De La Cruz was hired by Global to perform beach cleaning work from the BP oil spill in Grand Isle and on small satellite islands. On or about August 21, 2010, De La Cruz was allegedly injured while lifting a sack of oil contaminated sand to throw onto a pile of such sacks located on the beach. De La Cruz made a claim to Chartis who accepted the claim and began to provide workers compensation benefits.

However, on September 22, 2010 Chartis informed Global that it was denying the claim. Chartis' basis for denial was that when De La Cruz was injured, he was involved in typical longshoring activity, i.e., the loading and unloading of vessels, and therefore the claim was not covered under the policy because it expressly excluded coverage for injuries to Longshore and Harbor Workers' Compensation Act ("LHWCA") workers. De La Cruz also filed a claim for federal benefits under the LHWCA, While the claim was pending, a Claim Examiner made a recommendation that the claim did not qualify under the USL&H Act, but should be covered under the state workers compensation law. That claim was subsequently voluntarily dismissed by De La Cruz.

Global maintains that the factual circumstances of the claim clearly establish it is not a claim within the jurisdiction of the LHWCA. Global brings this action against Chartis asserting the following claims: (1) breach of contract for failing to provide workers compensation insurance, (2) negligence by failure to issue a policy of insurance to Global that would cover LHWCA claims, (3) estoppel by leading Global to believe that its workers were covered under the workers compensation insurance, and then denying coverage and (4) bad faith.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories

and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[2] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[3] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[4] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[5] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[6] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[7] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[8] If the evidence is merely colorable, or is not significantly probative, summary judgment may be

---

2 Fed. R.Civ. P. 56(c).

3 Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

4 Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

5 Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).

6 Anderson, 477 U.S. at 249.

7 Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

8 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

granted."[9]

## LAW AND ANALYSIS

Chartis maintains that because De La Cruz was a longshoreman, Global is not entitled to coverage for workers compensation benefits. Chartis relies on Louisiana law and an exclusion in the policy at issue. Louisiana Revised Statute 23:1035.2 provides that state workers compensation will not be paid to an employee covered by the Federal Employer's Liability Act, the Longshoremen's and Harbor Workers' Compensation Act, or any of its extensions, or the Jones Act. Chartis also relies on provisions in the policy which preclude coverage. Specifically, page 1 of the policy expressly states that it does not cover any federal workers or workmen's compensation law or bodily injury to a person subject to the LHWCA.[10]

Global acknowledges that the Chartis policy contains a provision which excludes from coverage claims subject to being paid pursuant to LHWCA. Global maintains that based on the undisputed facts in this case, De La Cruz does not qualify as a longshoreman. In determining if De La Cruz is a longshoreman, courts employ the 'situs' test and look at the 'status' of the injured employee.[11]

*Situs*

Under the situs requirement, we must determine if De La Cruz's work was maritime in nature under 33 U.S.C. § 902(3). The situs requirement is satisfied where an injury occurs "upon the

---

[9] Anderson, 477 U.S. at 249-50.

[10] Chartis exhibit D, C&I policy No. 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.

[11] Director, Office of Workers' Compensation Programs, US., 459 U.S. 297, 103 S.Ct. 634 (1983).

navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel)."[12]

Global maintains there is no evidence that the area in which the accident occurred was customarily used for maritime purposes. Chartis maintains that there is no question that the beach where De La Cruz was allegedly injured is a Longshore situs. Chartis relies on Nelson v. American Dredging Co.[13] which held that the claimant was a longshoreman, in part, because he met the situs test by virtue of his presence on a beach, which was an adjoining area customarily used by his employer to unload sand. In Nelson, the employer was in the business of dredging channels and reclaiming beaches. The employer used a hopper dredge to dredge sand from an area and load the sand into the hopper of the dredge vessel which then transported the sand to the pipeline. The sand was pumped from the hopper dredge through the pipeline and unloaded onto the beach. The sand came from the ocean floor approximately ten miles from the beach by the hopper dredge. The island beach was an area contiguous to navigable waters. The court concluded that the "beach qualified as an adjoining area customarily used by at least *one maritime employer* to unload its vessel."[14]

Global cites Tarver v. Bo-Mac Contrators, Inc., et al,[15] which involved injury to a welder on the construction of two barge slips being built on dry land but near the intercostal waterway. The

---

[12] 33 U.S.C. § 903(a); Thibodeaux v. Grasso Production Management, Inc., 370 F.3d 486 (5 Cir. 2004).

[13] 143 F.3d 789 (3 Cir. 1998).

[14] Id., at 797. (Emphasis theirs).

[15] 384 F.3d 180 (5 Cir. 2004).

court determined the situs requirement was not met even though the area in which the injury occurred would, in the future, serve a maritime purpose. However, at the time of the accident it was not serving such a purpose and there was no evidence that it had served such a purpose in the past.[16]

In the instant case, De La Cruz was working on a beach which was accessible by a 25 minute boat ride from Grand Isle, Louisiana. The workers, including De La Cruz were living on a barge (flotilla) and were transported by boat to a pier located on the beach of G1 Island. BP provided the transportation to the island beach and the living quarters. The beach was located approximately one half mile from a pier where it would dock; no other structures were present. De La Cruz worked on the beach at least 5 to 10 feet from the waterline of the Gulf of Mexico. De La Cruz's job included removing contaminated sand,[17] placing the contaminated sand in bags and then stacking the bags in a pile. The bags were then transported to a construction loader for transport near the pier where the bags were then loaded onto a vessel for transport off of the island. De La Cruz participated in loading the bags as part of a loading team– a chain or line of men– that loaded the boat with bags of contaminated sand by passing each bag down the line toward the boat.

Global argues that there is no evidence that the beach area where De La Cruz worked was customarily used for maritime purposes, thus there is no situs coverage. Global also relies on Texports Stevedore Co. v. Winchester,[18] wherein the court determined that a platform and marsh a short distance away from navigable waters qualified as an "adjoining area," however, an adjoining

---

[16] See also Brooker v. Durocher Dock and Dredge, 133 F.3d 1390 (11th Cir. 1998)(injured employee working on construction of sea wall adjoining navigable waters did not meet situs test because there was no evidence of the area ever used for maritime purposes).

[17] The sand was contaminated with oil.

[18] 632 F.2d 504, 515 (5th Cir. 1980)(en banc).

area must be "customarily used for significant maritime activity."

The Nelson case is not required as authority in this case because the evidence clearly shows that for approximately six weeks, the pier where the involved vessel was docked, was customarily used for loading and unloading cargo, i.e. bags of contaminated sand. Such use for this period of time, in the opinion of the court makes it customary usage for maritime purposes. Global's attorney quotes from the recommendation of the claims examiner for the U.S. Department of Labor wherein he states, *inter alia*, that there is no question as to situs. The court may be in error, but it appears obvious that the examiner felt that the situs test was met because he goes on to say that the remaining question was that of status. For reasons which will be hereinafter iterated this court does not agree with the examiner's status analysis but does agree with the situs requirement or that longshoreman situs is clearly met. Accordingly, the court finds that the situs test is met in this case.

*Status*

Chartis maintains that De La Cruz was engaged in maritime employment and therefore he meets the status test. 33 U.S.C. § 902(3) provides that:

> [t]he term "employee" means any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker . . .

In Herb's Welding, Inc.v . Gray,[19] the Supreme Court explained maritime employment as follows:

> . . .Congress did not seek to cover all those who breathe salt air. Its purpose was to cover those workers on the situs who are involved in the essential elements of loading and unloading; it is "clear that persons who are on the situs but not engaged in the overall process of loading or unloading vessels are not covered."

[19] 470 U.S. 414 (1985).

> While "maritime employment" is not limited to the occupations specifically mentioned in § 2(3), neither cant it be read to eliminate any requirement of a connection with the loading or construction of ships. As we have said, the "maritime employment" requirement is "an occupational test that focuses on loading and unloading." The Amendments were not meant "to cover employees who are not engaged in loading, unloading, repairing, or building a vessel, just because they are injured in an area adjoining navigable waters used for such activity." We have never read "maritime employment" to extend so far beyond those actually involved in moving cargo between ship and land transportation.[20]

Chartis argues that because De La Cruz assisted (twice a day) passing the sand bags onto the loader and then to a boat that De La Cruz meets the status requirement. De La Cruzs' job was to clean the beaches of contaminated sand. The major portion of his daily shift included filling sand bags with contaminated sand, taping the bags, stacking the bags, and then loading them onto a loader and finally passing them to crew boat employees (not Global employees). For 30 to 45 minutes, BP crew would hand supplies which consisted of Gatorade, water and plastic bags to Global employees who were on land and Global employees would pass to the BP crew (in the boat) bags of sand left over from the day before. At the end of the work day, Global employees would again pass sand bags to BP employees to load on the boat.

De La Cruz participated every morning and every evening in unloading and/or loading a vessel. The court does not feel, under established precedent that De La Cruz was required to stand on the pier or the vessel in order to be considered a longshoreman. Unquestionably the chain-gang of which he was a member, when it transferred empty bags, water, supplies, and loaded contaminated sand to and from the pier at which the vessel docked, which material either had been on the vessel or was being loaded onto the vessel, was clearly an integral part of the loading and

[20] Herb's Welding, 470 U.S. at 423-424 (citations omitted).

unloading of a vessel, the gravamen of the longshoreman test. The court agrees with counsel for Chartis that the 30-45 minutes in the morning and a like time in the afternoon spent in loading and unloading operations was adequate to make De La Cruz a longshoreman, notwithstanding that a much larger portion of his labor was devoted to filling and stacking sand bags on the beach. Accordingly, we find that the status requirement is met and that De La Cruz is covered under the LHWCA.

*Negligence and bad faith*

Chartis seeks to dismiss Global's negligence claims for Chartis' failure to issue a policy of insurance to Global covering Longshoreman Harbor Workers' Act claims. Chartis maintains that there is no evidence that it had an obligation to provide Global with a LHWCA policy. Chartis argues that Global is a sophisticated business party and remarks that its owner holds a juris doctorate from Venezuela and Loyola University. As noted by Chartis, there is no duty to advise the insured whether they are under-insured or not insured for particular perils.[21]

Global concedes that it has not established Chartis was negligent by failing to issue a policy of insurance covering LHWCA claims. Global maintains that Chartis was obligated to inform Global of the full extent of coverage provided by the policy. Global points to an audit report which expressly stated that the insurance policy covered beach cleaning work. After Chartis denied De La Cruz's claim for workers compensation benefits, Global became aware of an audit conducted by AIG, American International Companies of Global's policy during the period from 12/08/09 to 08/30/10. The auditor's report indicated that shoreline oil spill clean up work was covered by the

---

[21] Cameron Parish School Bd. v. State Farm Fire and Casualty Co., 560 F.Supp.2d 485, 489 (W.D. La.2008).

policy, or that the Global policy covered accidents occurring while employees of Global were engaged in beach cleaning work. [22] Even after the auditor's report was issued, Chartis continued to deny coverage when Global sought to have Chartis reconsider its initial denial. Global submits that Chartis was negligent in failing to provide the necessary coverage.

Global fails to cite law that when an auditor makes a report that the insurer has an obligation or duty to inform the insured of the full extent of the coverage. The policy itself, including endorsements provides the extent of coverage which fully advises the policy holder of the extent of the coverage. Furthermore, the auditor's comment quoted by Global's counsel that "the oil spill clean-up work is performed only on land and there is no USLMH exposure..." fails to mention or take into account the fact that Global employees were directly involved in loading and unloading a vessel.

This auditor's comment, apparently made without full acknowledge of the extent of the work being performed by Global employees, in no way enlarges the coverage of the policy. The court has not been made aware of any representation by defendant that defendant's coverage would extend to loading and unloading vessels, nor is there any evidence that Global in any way relied on the audit in deciding the extent of the coverage it had or any additional coverage it may have required. In conclusion, we do not find that the endorsement enlarges coverage provided by Chartis' policy to include shoreline operations that also involve vessel loading and unloading at a pier customarily used for such operations. Therefore, we will dismiss Global's claim of negligence.

---

[22] The auditor's report performed by AIG, American International Companies, a division of Chartis, dated 10/14/2010, indicated that De La Cruz was performing oil spill clean-up work and should have been classified as such to Code 9402 instead of 6216. The auditor's statement remarked that "The oil spill clean-up work is performed only on land and there is no USLMH exposure...". Global exhibit 2, Depo. of Dalia Matheus, attachment 1, p. 5.

*Estoppel*

Chartis seeks to have Global's claims of estoppel or "detrimental reliance" dismissed because Global cannot show that Chartis promised not to deny the De La Cruz's claim. Chartis submits that it initially paid the claim in good faith, but later denied coverage when it concluded that De La Cruz's was involved in maritime employment. Global's estoppel argument is based on the fact that Chartis paid three claims resulting from injuries to Global employees who were also cleaning beaches. These claims were made prior to the instant claim.

Global relies on Louisiana Civil Code article 1967 which provides in pertinent part as follows:

> A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying . . . Reliance on a gratuitous promise made without required formalities is not reasonable.

We find that each claim decision must be made on a case-by-case determination, but more significantly, Global has failed to show that Chartis made a promise to provide coverage or not deny coverage.[23] Therefore, we find that Global's estoppel claim must be dismissed. As noted by Chartis, it made no promise that Globals employees would all be covered under the policy. Accordingly, this claim will be dismissed.

In view of the court's decision that De La Cruz was a longshoreman, not covered by the policy for the reasons stated in this opinion, there is no basis upon which to support a claim of bad faith or fraud, even if such had been properly pled, and judgment dismissing such claims will be summarily rendered.

---

[23] See Himel Motor Supply of Lafayette, Inc. v. Genuine Parts Co., 2011 WL 309622, at *4 (La.App. 3 Cir. 2/2/11).

**CONCLUSION**

For the reasons set forth above, the motion for summary judgment filed by Chartis will be granted and the motion to dismiss/motion for summary judgment filed by Global will be denied.

We find that plaintiff is not entitled to claims under the Louisiana Workers' Compensation Act, and we dismiss Global's claim for reimbursement of workers compensation paid to De La Cruz with prejudice at plaintiff's cost.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 25th day of January, 2013.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE